491 P.2d 1132

**NELSON MACHINERY COMPANY, an Arizona corporation, Appellant,**

v.

**YAVAPAI COUNTY, a body corporate and politic, Appellee.**

No. 10441.

Supreme Court of Arizona,
In Banc.

Dec. 14, 1971.

Rehearing Denied Jan. 11, 1972.

Twitty, Sievwright & Mills by Howard A. Twitty, Phoenix, for appellant.

Thelton D. Beck, Yavapai County Atty., Prescott, for appellee.

CAMERON, Justice.

This is an appeal by the plaintiff, Nelson Machinery Company, from an order of the Superior Court granting defendant Yavapai County's motion to dismiss the complaint.

We are called upon to determine whether the legislature did require a person claiming a constitutional "self-executing" exemption from the payment of an inventory tax to file an affidavit before such exemption may be granted.

The facts are not in dispute and are briefly as follows. Nelson Machinery is a retailer and wholesaler engaged in the re-sale of used mining machinery and equipment. On 30 December 1968, Nelson Machinery purchased used mining equipment which was kept as inventory in the course of its business. There is no dispute that under Article 9, § 2 of the Arizona Constitution, A.R.S., this inventory was exempt from taxation.

The Assessor of Yavapai County, on 3 February 1969, determined the value of the property to be $847.276.00 and assessed taxes in the amount of $15,784.61. In October of 1969, the Sheriff of Yavapai County threatened to seize this inventory unless the tax was paid and on 20 October 1969, Nelson Machinery filed a merchandise exemption form claiming an exemption under Article 9, § 2 and on 26 November 1969 paid, under protest, the tax assessed plus interest and penalties. Nelson Machinery then sought to recover these amounts in the trial court action.

The question presented in this appeal is strictly one of law. There is no dispute as to whether the inventory was intended to be exempt under Article 9, § 2 of the Arizona Constitution. The sole question is whether the legislature by § 42–274 and § 42–275 A.R.S. required the plaintiff to file the necessary affidavits in order to take advantage of the inventory exemption.

Article 9, § 2 of the Arizona Constitution, as originally adopted in 1910, included several exemptions but did not, at that time, include the inventory exemption. In 1929, §§ 42–274 and 42–275 were enacted. These sections read as follows:

"§ 42–274. Affidavit

"A. A person claiming exemption from taxation under the provisions of § 2, article 9, constitution of Arizona, shall ap-

pear before the county assessor and make affidavit as to his eligibility, answering fully all questions appearing on a form provided by the county assessor for such purpose or otherwise propounded, but a person in the military service of the United States who is absent from the state, or who is confined in a veterans' hospital or in any licensed hospital, may make the required affidavit in the presence of any officer authorized to administer oaths upon a form obtained from the county assessor.

"B. A false statement made or sworn to in the affidavit shall constitute and be punishable as perjury.

"§ 42–275. Proof of exemption

"The assessor may, in his discretion, require additional proof of the facts stated by the affiant before allowing an exemption. Failure upon the part of a person entitled to exemption to make affidavit or furnish evidence as required by this article between the first Monday in January and April 30 each year shall be deemed a waiver of such exemption."

Later, in 1964, the inventory exemption was added to Article 9, § 2 of the Arizona Constitution. In 1967, the legislature re-enacted § 42–275 A.R.S., and in 1970, the legislature re-enacted § 42–274 A.R.S. We are concerned with the year 1969, so the 1970 re-enactment of § 42–274 A.R.S. is irrelevant for our purposes.

It is appellant's contention that § 42–274 A.R.S., first enacted in 1929 and last amended in 1951, referred to the exemption clause of Article 9, § 2, as it existed at that time and not as it was later amended. Appellant contends that when statute "A" adopts a part or all of statute (or constitutional clause) "B" by a specific reference, such adoption takes statute or clause "B" as it exists at the time of the enactment or re-enactment of statute "A" and does not include subsequent additions or modifications of statute or constitutional clause "B". Applied to the instant case, § 42–274 A.R.S. would apply only to those exemptions allowed by Article 9, § 2 of the Ari-

zona Constitution, in existence in 1929 or at the time the statute (§ 42–274 A.R.S.) was amended in 1951:

"* * * [W]hen a statute adopts a part or all of another statute by a specific and descriptive reference thereto, such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute unless it does so by express intent." 168 A.L.R. at 631.

However persuasive this argument might be, Clements v. Hall, 23 Ariz. 2, 201 P. 87 (1921); Dairy and Consumers Co-op Ass'n v. Arizona Tax Commission, 74 Ariz. 35, 243 P.2d 465 (1952); Maricopa County v. Osborn, 60 Ariz. 290, 136 P.2d 270 (1943), the primary purpose of all statutory construction is to determine legislative intent and in the case of a constitutional clause to give effect to the intent and purpose of the framers (here the legislature) and of the people who adopted it. Apache County v. Southwest Lumber Mills, Inc., 92 Ariz. 323, 376 P.2d 854 (1962). There is nothing in Article 9, § 2 to indicate that the legislature or the people intended that the exemptions granted by that section should not be subject to reasonable legislation to provide for an orderly process by which a person claiming an exemption could obtain one. Indeed, quite the opposite appears when the exemption clause as to household furniture, also in Article 9, § 2, is read:

"* * * All household goods owned by the user thereof and used solely for noncommercial purposes shall be exempt from taxation, and such person entitled to such exemption shall not be required to take any affirmative action to receive the benefit of such exemption. * * *"

Had the legislators in drafting the inventory clause wanted to dispense with the affidavit requirement, as they did in the household goods exemption clause, they would have included such language in the provision for inventory exemption. The reason for treating household goods differently from inventory is certainly reason-

able. Household goods are easily identifiable and the assessor is directed to ignore this type of property exempt by the Arizona Constitution. This is not so with a business inventory which at times may not be so easily identified as inventory.

The re-enactment of § 42–275 A.R.S., after the inventory provision had been approved by the voters, indicates the intent of the legislature that an affidavit (as provided in § 42–274 A.R.S.) be required before a person might claim his exemption as provided in the Arizona Constitution.

There is another reason why the appellant cannot prevail. § 42–274 A.R.S. is a procedural statute. It does not affect the rights provided for under Article 9, § 2 of the Arizona Constitution. Rather, it provides a procedure whereby these rights can be exercised. Such a statute is not only reasonable, but necessary. As this court stated in reference to the veteran's exemption:

"* * * [I]t appears to us reasonable and proper that some method should be provided by the legislature for the determination of those who may be entitled to the exemption provided for in the Constitution." State v. Allred, 67 Ariz. 320, 327, 195 P.2d 163, 168 (1948).

Furthermore, our Court of Appeals has stated:

"* * * [W]hen the constitutional amendment was enacted by the electors of this state, without expression of a contrary intent, * * * they were aware of the existence of A.R.S. § 42–274." Fry v. Mayor and City Council of Sierra Vista, 11 Ariz.App. 490, 494, 466 P.2d 41, 45 (1970).

We hold that the legislature could provide a reasonable method for claiming the exemption, pursuant to Article 9, § 2 of the Arizona Constitution, and has in fact done so by § 42–274 and § 42–275 A.R.S. Nelson Machinery, having failed to comply with this reasonable regulation, waived its right to claim this inventory exemption and

is not entitled to the exemption for the year in question.

Judgment affirmed.

STRUCKMEYER, C. J., and LOCKWOOD, J., concur.
NOTE: HAYS, V. C. J., having disqualified himself, did not participate in the determination of this matter.

UDALL, Justice (dissenting).

I am unable to concur with the result reached by the majority in this case. In my opinion, it is contrary to the law, not only in this jurisdiction, but in the majority of jurisdictions in this country. The Court's reasoning allows a kind of "back door legislation" whereby a statute is extended by this Court to cover an exemption not contemplated by the legislature when it originally enacted that law.

The Constitution of Arizona was adopted in 1910. Article 9, Section 2 at that time contained some four exemptions from taxation: (1) federal, state, county and municipal property; (2) educational, charitable, religious property; (3) public debts; (4) widows' and veterans' property. In 1929, the legislature enacted § 42–274 requiring an affidavit to be filed by any "* * * person claiming exemption from taxation under the provisions of § 2, article 9, constitution of Arizona." By specifically mentioning Article 9, Section 2, § 42–274 incorporated the list of four exemptions into its provisions. Since the inventory exemption was not added until 1964, § 42–274, when enacted and later amended in 1951, specifically incorporated Article 9, Section 2 as it was at that time, when no inventory exemption existed.

The rule in most jurisdictions as well as in Arizona is clear. When one statute specifically incorporates the provisions of another statute (the "adopted statute"), the adopting statute (here § 42–274) "must read as if the provisions" of the adopted statute or constitutional provision (here Article 9, Section 2 of the Arizona Constitution) "had been bodily incorporated into

it *at the time of its enactment.*" (Emphasis supplied). Dairy and Consumers Co-op Ass'n v. Arizona Tax Commission et al., 74 Ariz. 35, 243 P.2d 465 (1952); in accord with this: Clements v. Hall, 23 Ariz. 2, 201 P. 87 (1921); Maricopa County v. Osborn, 60 Ariz. 290, 136 P.2d 270 (1943), 168 A.L.R. at 631. Section 42–274, therefore, reads the same as if it had specifically enumerated the four exemptions existing in 1929 and made them subject to the affidavit provision. Furthermore, when one statute incorporates a part or all of another as it exists at that time, the subsequent amendment or repeal of the adopted statute (Art. 9, Section 2 of the Constitution) has no similar effect upon the adopting statute (§ 42–274). The amending of the Constitution to add the inventory exemption could not have amended § 42–274 to make the affidavit apply to this new exemption. Cases in Arizona are in accord with this position and have held that where a reference statute specifically incorporates another, "a subsequent repeal [and impliedly —a subsequent amendment]" of one "has no effect whatever upon" the other. Dairy and Consumers Co-op Ass'n v. Arizona Tax Commission, 74 Ariz. at 38, 243 P.2d at 467. The reason for this is clear. The legislature conceivably had no way of anticipating subsequent additions to the list of exemptions. For this reason this Court should not infer a legislative intent to impose such an affidavit requirement on the inventory exemption when such an inventory exemption did not exist in 1929, the time the legislature enacted § 42–274, nor in 1951 when it was amended. Furthermore, Art. 4, pt. 2 § 14 of the Arizona Constitution specifically prohibits any revision or amendment of a statute without specifically enumerating its title and substance. For this reason, it is generally held that reference statutes such as § 42–274 are not amendatory, but are complete in themselves.

In State v. Allred, 67 Ariz. 320, 195 P.2d 163 (1948), this Court held that the legislature can provide a procedure to properly administer these exemptions. Section 42–274 provides such a procedure and clearly

under *Allred*, an affidavit may be required to take advantage of the four original exemptions. But, before the affidavit requirement of § 42–274 can be applied to a subsequent unqualified amendment to the Constitution (the inventory exemption), clear legislative intent must be found. This is especially true here since a constitutional right is deemed waived by the failure to file the affidavit.

Reliance by the majority on Fry v. Mayor and City Council of Sierra Vista, 11 Ariz.App. 490, 466 P.2d 41 (1970), is inappropriate for a number of reasons.

*Fry* bases its decision—that § 42–274 applies to inventory—on the rule of law that when a court views two statutes in pari materia it will presume that the legislature is aware of one when it enacts the other and will interpret them consistently. This reason seems inapplicable to the facts in this case. First, § 42–274 is a reference statute incorporating a Constitutional provision and the two should not be viewed as two independent statutes in pari materia. Secondly, *Fry* holds that the electors were aware of the existence of § 42–274 when they amended the Constitution to add the inventory exemption. Such a presumption might be reasonable as applied to the legislature when it enacts a statute in pari materia with another existing statute. Such a presumption cannot be made when referring to the electorate. I find no case which holds this, nor would I advocate such a rule which might enable courts to enact or extend laws based upon such a presumption. A finding that the electorate was aware of § 42–274 when it added the inventory exemption to the Constitution—which on its face was unqualified and "self-executing"—is inherently unreasonable.

It is argued that legislative intent can be derived from the subsequent re-enactment of § 42–275 after the inventory exemption had been enacted. For two reasons this is not persuasive. First, the main question is whether the affidavit requirement of § 42–274 applies, not whether § 42–275 applies. Legislative intent as to § 42–274

cannot be derived from a re-enactment of § 42–275. Secondly, the legislature re-enacted § 42–275 simply to change the time provision for filing the affidavit from "April 30" to "March 1" of the tax year, and not for the purpose of extending the affidavit requirement to the inventory exemption.

It is contended by the majority that legislative intent is expressed in the 1968 household goods exemption, which specifically states that "no specific action" is needed to qualify for that exemption. It is argued that "[h]ad the legislature in drafting the inventory clause wanted to dispense with the affidavit requirement as they did in the household exemption, they would have included such language in the provision for inventory exemption." This, though, assumes that the "no specific action" language can only refer to the affidavit requirement of § 42–274. But this language might reasonably refer to and limit § 42–632 which requires affirmative action in relation to the in transit and transitory household goods exemption under § 42–631. Without this language requiring no affirmative action the affidavit required by § 42–632 might be interpreted to apply. This negates that possible interpretation. If what is required is clear legislative intent, this does not comply.

Even a finding of legislative intent should not change the result. Arizona seems to follow the rule that the amendment of an adopted statute *without qualification* does not affect the adopting statute. Maricopa County v. Osborn, supra, relying upon Kendall v. United States ex rel. Stokes, 12 Pet. 524, 9 L.Ed. 1181; some other states in accord with this position are California, People v. Whipple, 47 Cal. 592, and New York, Wick v. Ft. Plain & R.S.R. Co., 27 App.Div. 577, 50 N.Y.S. 479. Other states appear to follow the rule that the adopting statute is unaffected by an amendment of the adopted statute, *absent contrary legislative intent*. This is the position the majority has taken; and as heretofore stated, I fail to find the clear legislative intent.

Finally, a result in favor of the County would result in an injustice to the petitioner. The majority holds that § 42–274 and § 42–275 are procedural statutes and do not affect the petitioner's constitutional rights, yet this decision against Nelson Machinery Company results in a judgment of over $15,000 in assessed taxes on property the Constitution specifically exempts from taxation. Furthermore, the majority says:

> "There is nothing in Article 9, § 2 to indicate that the legislature or the people intended that the exemptions granted by that section should not be subject to reasonable legislation to provide for an orderly process by which a person claiming an exemption could obtain one."

This is true, but the language is misleading. The question should be: Is there anything in Art. 9, Section 2 to indicate to the taxpayer that such a restriction is imposed upon him in order to take advantage of his constitutional tax exemption? A look at Article 9, Section 2, reveals a number of unqualified exemptions enacted by the people. It specifically provides that "this section shall be self-executing," i. e. these rights are immediately effective without the necessity of ancillary legislation. No reference is made in the body of this section, Historical Note, Cross-References, nor Notes of Decision to either § 42–274 or § 42–275. One might easily rely upon a reading of this Constitutional provision and take no further action. It is hard to imagine why Nelson Machinery Company would voluntarily and knowingly fail to file its affidavit since failure to do so is a waiver of its exemption, resulting in this case, in an assessed tax in excess of $15,000. There is no benefit to be derived from a failure to file the affidavit. The obvious reason for this failure to file is that petitioner was unaware of the requirement that the majority herein holds to exist. The purpose of § 42–274 is merely to provide an orderly system of accounting for tax exempt property. It is not, nor should it be, to catch the unwary and compel them to pay taxes on property that is undisputedly exempt from such taxation.